IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CALLIE W.,[1] § § **Plaintiff,** § § v. § § NANCY A. BERRYHILL, § **Acting Commissioner of Social** § **Security Administration** § § **Defendant.** § | Civil Action No. 4:18-cv-00745-O-BP |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff filed this action under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). (ECF No. 1 at 1; Tr. 12). After considering the pleadings, briefs, and administrative record, the undersigned recommends that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.    STATEMENT OF THE CASE**

Plaintiff applied for DIB on October 27, 2015, alleging disability based on anxiety, depression, fibromyalgia, migraines, history of breast cancer, and obesity. (ECF No. 16 at 2). The Commissioner initially denied her application on February 1, 2016 and again upon reconsideration on May 9, 2016. (Tr. 12). Plaintiff timely filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 25). She attended the hearing before ALJ Daniel Curran on April 10, 2017

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies the plaintiff only by first name and last initial.

in Dallas, Texas and testified. (*Id.* at 12). Also present were her non-attorney representative, Sean Sullivan, and a vocational expert ("VE"). (*Id.*). On July 18, 2017, the ALJ rendered a decision finding that she was not disabled. (*Id.* at 12-25).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2015. (Tr. 14). At step two, the ALJ determined that she had the severe impairments of fibromyalgia, migraines, status post-malignant neoplasm of the breast, obesity, anxiety, and affective disorder. (*Id.*). At step three, the ALJ found that her impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (*Id.*). The ALJ concluded that she retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (*Id.* at 17-23). At step four, the ALJ determined that she was unable to perform her past relevant work. (*Id.* at 23). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that she could perform. (*Id.* at 24-25).

The Appeals Council denied review on July 10, 2018. (Tr. 1-3). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   FACTUAL BACKGROUND

According to her pleadings, testimony at the administrative hearing, and administrative record, Plaintiff was forty-seven years old on the alleged disability onset date of June 1, 2015, and forty-nine years old at the time of the administrative hearing. (ECF No. 16 at 3; Tr. 12). She completed a high school education, and her employment history includes work as an order puller,

inspector, and warehouse coordinator. (ECF No. 16 at 3). She asserts that her physical and mental impairments render her disabled under the SSA.

### III. LEGAL STANDARD

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of

showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

**IV. ANALYSIS**

Plaintiff raises four issues on appeal: (1) the ALJ failed to properly consider all of her functional limitations in determining her RFC; (2) the ALJ failed to properly evaluate the medical opinion evidence; (3) the ALJ's hypothetical question to the VE did not reasonably incorporate

her physical limitations; and (4) the ALJ's failure to analyze the 20 C.F.R. § 404.1527 factors constitutes reversible error. (ECF No. 16 at 4-9).

### A. The ALJ Properly Considered all of Plaintiff's Functional Limitations in Determining her RFC.

Plaintiff argues that the ALJ's assessment of her mental limitations is inconsistent with the medical opinion of Wasiq Zaidi, M.D., her treating psychiatrist, and the opinion of Susan Dalrymple, a licensed clinical social worker and her treating counselor. (*Id.* at 5-7). She argues that the ALJ's assessment of her mental limitations negatively impacted her RFC.

In response, the Commissioner argues that "the ALJ's RFC assessment reflects the degree of limitation [that he] . . . found in the paragraph B mental function analysis." (ECF No. 17 at 9). The Commissioner argues that, "contrary to Plaintiff's claim, the ALJ's RFC assessment addressed any limitations resulting from mental impairments (Tr. 17-18, Finding 5)." (*Id.*). The Commissioner asserts that "substantial evidence supports the ALJ's mental RFC assessment." (*Id.* at 10). To support this conclusion, the Commissioner relies upon Plaintiff's self-reporting, her sister's opinion, the medical opinions of Dr. Zaidi and Seema Haque, M.D., and the ALJ's ability to properly interpret the medical evidence to determine her capacity to work. (*Id.* at 10-12).

Substantial medical evidence of record supports the ALJ's assessment of Plaintiff's mental limitations and her RFC. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. Moreover, the ALJ's assessment of her mental limitations is consistent with the medical opinions of Dr. Zaidi, Dr. Haque, and Ms. Dalrymple. The Court is not permitted to reweigh the evidence and can only ensure that the ALJ applied the correct legal standards, and that there was substantial evidence in the record to support his decision. *Id. See also Harris*, 209 F.3d at 417.

Here, Plaintiff does not argue that the ALJ applied incorrect legal standards, but instead asserts that his assessment of her mental limitations was not supported by substantial evidence.

5

However, substantial medical evidence supports his determination. Plaintiff was treated for mental impairments at the Behavioral Health Clinic of Huguley Memorial Hospital from June 26 to July 22, 2015. (Tr. 819-1001). During this same time, Ivan Pawlowicz, M.D. diagnosed her with recurrent and severe major depressive disorder on June 30, 2015. (Tr. 317). However, Dr. Zaidi begin treating her as early as June 20, 2013, and on several occasions assessed that her depressive disorder was "moderate," that she "seem[ed] to be doing good," and that her "mood [was] fine." (Tr. 319-322; Tr. 332-34). On August 6, 2015, Dr. Zaidi examined her and noted that although she was "sad looking," she only showed "[s]igns of moderate depression." (Tr. 333). Dr. Zaidi elaborated further that she presented as "calm" and "attentive;" "exhibit[ed] speech that is normal in rate, volume, and articulation and is coherent and spontaneous;" showed no "indicators of psychotic process;" that her "[v]ocabulary and fund of knowledge indicate cognitive functioning in the normal range;" that her "[i]nsight into problems appear[ed] fair" as did her "judgment;" and that although she showed "signs of anxiety," "[t]here [were] no signs of hyperactive or attentional difficulties." (*Id.*). On September 30, 2015, Dr. Zaidi stated that she showed "signs of mild depression" even though she presented as flat, appeared anxious, and had a sad demeanor. (Tr. 549).

On August 10, 2015, Dr. Zaidi assessed her current level of functional capabilities. (Tr. 492). He found that she had an extreme limitation regarding her ability to "maintain focus/attend/concentrate throughout a normal work day" and moderate to severe limitations regarding her ability to "maintain safety of self and others" and to "maintain appropriate control of emotions." (*Id.*).

Dr. Zaidi's medical opinion is conflicting. Therefore, the ALJ was charged with interpreting Dr. Zaidi's medical opinion to reconcile it with the entire record concerning Plaintiff's

6

mental limitations and rendering the proper RFC. *Newton*, 209 F.3d at 452 (quoting *Selders*, 914 F.2d at 617). The ALJ found that Plaintiff had a severe impairment of anxiety and affective disorder. (Tr. 14). In arriving at this conclusion, the ALJ properly applied the Psychiatric Review Technique (*see* 20 CFR § 404.1520(a)) and determined that she had mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (Tr. 16-17). The ALJ further determined that she had moderate limitations in adapting or managing herself. (*Id.*). The ALJ did not simply determine that she had no mental limitations, but instead reconciled Dr. Zaidi's conflicting medical opinion and the substantial record evidence to arrive at a conclusion regarding Plaintiff's severe mental health impairments and RFC. (*Id.* at 16-18).

Moreover, the ALJ was not required to give controlling weight to the opinions of Ms. Dalrymple. Plaintiff saw Ms. Dalrymple for counseling from July 13, 2015 to March 7, 2016. (Tr. 571-72). As a licensed clinical social worker, Ms. Dalrymple is not a medical doctor or acceptable medical source according to the applicable regulations. *See* 20 C.F.R §§ 404.1502, 404.1513, 416.902, 416.913 (eff. Mar. 27, 2017). Although the ALJ was required to consider all the evidence in the record, he was not required to give Ms. Dalrymple's opinion controlling weight because her opinion does not constitute objective medical evidence. *See* 20 C.F.R § 404.1526(c) (eff. Mar. 27, 2017) and *Johnson v. Astrue*, No. 5:09-CV-112-BG, 2010 WL 1817225, at *1 (N.D. Tex. Jan. 12, 2010). Thus, Plaintiff's argument concerning inconsistencies between Ms. Dalrymple's opinion and conclusions of the ALJ is unpersuasive.

Furthermore, even if Plaintiff's argument were persuasive, the ALJ's assessment of her mental limitations is not inconsistent with Ms. Dalrymple's assessment. Ms. Dalrymple confirmed that Plaintiff has a diagnosis of severe major depressive disorder and generalized anxiety disorder

that has been "well documented." (Tr. 572). The ALJ agreed and acknowledged that she had a "well-documented major depressive disorder with symptoms of anhedonia, sleep disturbance, decreased energy, suicidal thoughts, and easy distractability." (Tr. 16).

Finally, the ALJ applied correct legal standards and properly considered Dr. Haque's December 15, 2016, January 17, 2017, and February 23, 2017 medical opinions concerning Plaintiff's mental limitations. (Tr. 16). Dr. Haque noted that Plaintiff's appearance was appropriate; she made good eye contact; she had normal motor activity and speech; her mood was euthymic; her affect was appropriate as was her thought process; her association was normal; she had no suicidal/homicidal ideations, obsessions, or preservation; she had a good attention span; there were no abnormalities noted regarding her sense and perception; her recent memory was intact; she had an average intellect; and her vocabulary was age appropriate, insight was good, abstract thinking was intact as was her judgment. (Tr. 1005-07). Dr. Haque concluded that she did not pose a significant risk of harm to herself or others. (*Id.*). Dr. Haque noted that her response to treatment was positive. (*Id.*). However, on March 23, 2017, Dr. Haque noted that her mood was anxious, thought process was ruminating, and insight was fair. (*See* Tr. 1008). Except for this visit, Plaintiff's other mental indicators were relatively positive during her visits with Dr. Haque. (*Id.*).

Given this substantial evidence and the fact that the ALJ applied correct legal standards, he did not err in assessing Plaintiff's mental limitations or determining her RFC.

### B. The ALJ Properly Evaluated the Medical Opinion Evidence.

*1. The ALJ's Hypothetical Question to the VE did Not Constitute Reversible Error.*

Plaintiff argues that the ALJ failed to incorporate her physical limitation that she must alternate positions every 15 to 30 minutes into his hypothetical question to the VE. (ECF No. 16 at 9). The Commissioner does not address this argument in her response. (*See* ECF No. 17). When

an ALJ relies on a VE's testimony, the Commissioner must prove that he posed hypothetical questions to the VE that "reasonably [incorporates] the disabilities recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quotations omitted).

The Fifth Circuit articulated a test in *Morris v. Bowen* to determine whether an ALJ's hypothetical question is defective.

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

864 F.2d 333, 336 (5th Cir. 1988).

Here, the ALJ's hypothetical question to the VE described an RFC of light work. (Tr. 50). The question reasonably incorporated all her physical and mental limitations that he recognized to craft her RFC. *Morris*, 864 F.2d at 336; (*see also* Tr. 17-18). For instance, the ALJ assessed that the longitudinal picture of her medical record did not substantiate her subjective claims that she could only stand or sit for 15 to 30 minutes at a time. (Tr. 23; Tr. 43). For this reason, the ALJ's hypothetical question to the VE did not incorporate a limitation that she needed to alternate positions every 15 to 30 minutes. Moreover, Plaintiff's non-attorney representative was present at the hearing. (Tr. 12). He heard Plaintiff testify that she could only stand or sit for 15 to 30 minutes at a time. (Tr. 42-43). Yet he did not cross-examine the VE about this specific limitation though he could have. (Tr. 51-56). Under these facts, the ALJ's hypothetical question to the VE does not constitute reversible error.

> 2. *The ALJ's Failure to Analyze the 20 C.F.R. § 404.1527 Factors did Not Constitute Reversible Error*.

Plaintiff argues that the ALJ's finding that Gerald L. Ray, D.O.'s medical opinion was generally, but not fully, consistent with her longitudinal record was not based upon an analysis of the 20 C.F.R. § 404.1527 factors. (ECF No. 16 at 8); (*see also* Tr. 23; Tr. 456-59). She further argues that the ALJ did not explain which parts of Dr. Ray's medical opinion he accepted or rejected, and that he did not indicate which contravening evidence from a treating or examining physician that he relied upon to dismiss Dr. Ray's medical opinion. (ECF No. 16 at 8-9).

The Commissioner responds that the ALJ was not required to conduct an analysis under 20 C.F.R. § 404.1527 because he did not dismiss Dr. Ray's medical opinion absent competing first-hand medical evidence. (ECF No. 17 at 13). The Commissioner argues that "competing first-hand medical evidence exists in the form of numerous medical records that support the ALJ's conclusion that Dr. Ray's opinion was not fully consistent with the record." (*Id.*).

In *Newton*, the court determined that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." 209 F.3d at 453. "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)).

The record contains substantial evidence controverting Dr. Ray's medical opinion, which the ALJ discussed in detail. The ALJ relied upon a psychological examination conducted by the Behavioral Health Clinic of Huguley Memorial Hospital. (Tr. 19). That examination showed that

10

Plaintiff was oriented and in no acute distress; well nourished, appropriate, and cooperative; had normal sensory, motor functions, and judgment; had no anxiety, suicidal ideations, or pain behavior; was congruent, relaxed, calm, and able to make sensible decisions; and could behave appropriately in social situations. (Tr. 316).

Despite Plaintiff's argument that the ALJ "never referred to the opinion of Dr. Zaidi," the ALJ did in fact consider Dr. Zaidi's medical opinion as noted above. The ALJ also relied upon Winfred Sardar, M.D.'s medical examination of Plaintiff on December 3, 2015. (Tr. 20). During this examination, her musculoskeletal system showed no contractures, malalignment, tenderness, or bone abnormalities. (Tr. 607-08). Her extremities were unremarkable, and she tested negative for Spurling's maneuver. (*Id.*). Her hips had a normal internal and external rotation with no tenderness. (*Id.*). The examination revealed no trigger point pain. (*Id.*). During this examination, she declined physical therapy, reasoning that she had been practicing yoga at home. (*Id.*).

The ALJ also considered the medical opinion of Lixin Liao, M.D., Plaintiff's treating physician for her post-breast cancer health maintenance. (Tr. 20-21). Dr. Liao's multiple physical examinations showed that she had no palpable lymph nodes, her lungs were clear to auscultation, and her heartbeat and rhythm were normal. (Tr. 541-47; Tr. 562-66).

The ALJ also considered the medical opinions of Giovanni Geslani, M.D., another treating physician, and Dr. Haque. (Tr. 21). These opinions controvert Dr. Ray's opinion. Thus, in considering all the medical opinions of Plaintiff's treating and examining physicians, the ALJ determined that Dr. Ray's opinion was not fully consistent with the longitudinal picture of her medical record. (Tr. 23). In so finding, the ALJ was not required to conduct an analysis under 20 C.F.R. § 404.1527 because of the other controverting medical opinions from her other treating and

examining physicians. *Newton*, 209 F.3d at 453. Therefore, the ALJ's failure to analyze the 20 C.F.R. § 404.1527 factors does not constitute reversible error.

## V. CONCLUSION

Given the substantial evidence and the fact that the ALJ applied correct legal standards, he did not err in assessing Plaintiff's mental limitations or determining her RFC. Moreover, because the ALJ reasonably incorporated her mental limitations that he recognized when crafting her RFC, his hypothetical question to the VE did not constitute reversible error. And ultimately, there are controverting medical opinions from Plaintiff's other treating and examining physicians. Consequently, the ALJ was entitled to consider Dr. Ray's medical opinion without giving it controlling weight and without conducting a 20 C.F.R. § 404.1527 analysis.

## RECOMMENDATION

After review of the pleadings and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    Signed **July 2**, **2019**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE